INDUSTRIAL FIBRE CO v. STATE.

Ohio Appeals, 8th Dist., Cuyahoga Co.

Decided March 19, 1928.

Syllabus by Editorial Staff.

**855. NUISANCE—1104. Statutes.**

Omission of word "manufacture" from Section 12646 GC., as enacted in 1857, held to indicate that section not intended to apply to manufacturing plant.

**225. CHARGE OF COURT.**

In prosecution of corporation for violation of 12646 GC., it is error to refuse requested instruction to effect that jury may consider when plant was built, nature of occupation of surrounding territory and influence of business on growth of community. Court should have either given such request or covered principals involved in own language or incorporated same in general charge.

**1265. WEIGHT OF EVIDENCE.**

Conviction of corporation under 12646 GC. held against weight of evidence.

Error to Common Pleas.
Judgment reversed.

Boyd, Cannon, Brooks & Wickham, and Beckerman & Felsman, Cleveland, for Indust. Fibre Co.

E. C. Stanton and J. A. Persky, Cleveland, for State.

## STATEMENT OF FACTS.

This cause comes into this court on a petition in error to the Common Pleas Court of Cuyahoga County.

In the court below the plaintiff in error was defendant and was convicted of violating Section 12646 of the General Code of Ohio and was fined $25 and ordered to abate the nuisance by a certain time. A motion for a new trial was filed which was overruled and a bill of exceptions embodying all of the testimony, some sixteen hundred pages, was taken, and a petition in error was filed in this court to reverse said judgment. Several errors are urged why this judgment of conviction should be reversed.

From this record we learn that the Industrial Fibre Company is engaged in the manufacture of artificial silk and in 1917 they located this plant on the Big Four Railroad track at West 98th and Walford Street, on the North side of the four-tracked railroad, in an industrial center, and the record shows that at that time there were not more than two houses within one-half a mile of the location of this plant, and that the plant is now located and was then in what was an industrial center, upon a main railroad and adjacent to railroad yards. The evidence shows that it is still in the industrial center, and that industries of all kinds and characters, emitting more or less noises and smells, help to make up the thousand smells which made Cologne famous in olden days.

VICKERY. J.

"The indictment in this case was framed under Section 12646, which reads as follows:

"Whoever erects, continues, uses or maintains a building, structure or place for the exercise of a trade, employment or business, which, by occasioning noxious exhalations or noisome or offensive smells, becomes injurious to the health, comfort or property of individuals or of the public * * * shall be fined not more than $500.

Section 12657 provides that this law shall apply to corporations, and when a corporation is convicted there shall be an abatement of such nuisance, and the judgment of the court in the instant case ordered an abatement of this nuisance in addition to the fine assessed.

The history of the statute in question, that is, Section 12646, is rather interesting. The first statute that was passed upon this subject, that is, nuisances, was passed as far back as 1832. That did not cover the questions involved in this case, but the statute under which this indictment was framed, was passed in 1857, and found in Volume 54 of the Ohio Laws, and it is interesting to note, in that statute, that there appeared a word which does not exist in the present statute—a word which may or may not be important. The statute of 1857, which went into effect on the 15th day of April of that year, was as follows:

"That the erecting, continuing, using, or maintaining any building, structure, or other place for the exercise of any trade, employment, manufacture or other business, which by occasioning noxious exhalations, noisome or offensive smells, becomes injurious and dangerous to the health, comfort, or property of individuals, or the public; * * * shall be deemed nuisances; and every person or persons guilty of erecting, continuing, using or maintaining, or causing any such nuisance, shall be guilty of a violation of this act."

Upon a comparison of this statute with the one in force at the time this indictment was returned, you will see that they are absolutely the same, with the exception that "manufacture" has been dropped out. That the Industrial Fibre Company is a manufacturing plant is beyond question, and if there was design in leaving "manufacture" out of that statute, it would seem as though the law would not apply to the instant case—that there was a distinction between a business and a manufacturing plant.

It would seem, therefore, that the Legislature had sufficiently guarded against the establishment of these manufacturing plants so that they might not become a nuisance to the institutions of the state and, not desiring to prohibit the manufacturing business in the locations given up to industrial pursuits, the word "manufacture" was dropped out of the statute. If this be so, would there be any violation of a criminal statute in building a manufacturing plant outside of the restrictions laid down in the 63d Ohio Laws, especially if located in an industrial center? If this be so, would the statute be operative against the plaintiff in error in the instant case? If not, then the conviction was wrongful, because no offense was charged in the indictment, there being, as already pointed out, a clear distinction between manufacturing and the other terms relating to occupation in the statute, and the conviction, as pointed out, would not only be contrary to the weight of the evidence, but contrary to law as well, there being no offense charged in the indictment.

One of the errors complained of is that the court refused to give certain requests. Personally, I think all of the requests complained of, the first, the fifth and the fourth, were proper requests, and had it been a civil case and had they been requested before argument and been refused, this court would have been compelled to reverse the judgment of the court for such refusal to give, but in a criminal case there is no authority which compels a court to give the requests before argument or after argument, as charged, but there is authority that if these requests embody proper principles of law and they are applicable to the case in hand, if they are not given substantially, then it is error on the part of the court, and error of commission too. On an examination of the general charge of the court, the fifth request was substantially given. I think it was substantially given, not in the words, but so that there would not be much error, but the fourth proposition was not given at all, although there was much evidence introduced in the record to show the condition of the locality of the plaintiff's plant and surrounding territory when and before established.

In Eller v. Koehler, 68 OS. 51, 67 N. E. 89 (1903) the Supreme Court of Ohio held, quoting from the syllabus:

"All that can be required of men who engage in lawful business is that they shall regard the fitness of locality. In the residence sections of a city, business of no kind is desirable or welcome. On the other hand one who becomes a resident of a trading or manufacturing neighborhood, or who remains while, in the march of events, a residence dis-

trict gradually becomes a trading or manufacturing neighborhood, should be held bound to submit to the ordinary annoyances, discomforts and injuries which are fairly incidental to the reasonable and general conduct of such business in his chosen neighborhood."

Now this would indicate, while it was a civil case, that there was a difference between a manufacturing business placed in an industrial center and one placed in a residence district. What would be proper in one case would not necessarily be proper in another. For example, it is perfectly proper, in an area given up to industrial plants, to establish a legitimate manufacturing enterprise, even though that enterprise will cause inconvenience and is deleterious in some measure to the health of the people. However, if such a plant were established in any residence district, the rule would be entirely different; and I do not anticipate that the fact that the authority cited is from a civil case makes any difference in legal effect, but if, as it is argued, that it does, we have direct authority in Commonwealth v. Miller, 139 Penn St., 77; 21 Atlantic, 138 (1891), where the Supreme Court of Pennsylvania held that a refusal to charge as to which occupied the field first, was error. In that case the court charged the jury (inter alia) that "it is no defense to an indictment for a common nuisance that the business complained of has been in operation many years," that the size of the business made no difference, and that it was not a defense in any measure that the business was a useful one. A conviction was had in the trial court, but the judgment was reversed for these and other similar errors.

Now under the authority laid down in the 68th OS. supra, it does make a difference as to when or where the manufacturing plant is located, and consequently the court committed error in not giving, in substance, the fourth request, which is as follows:

"In arriving at your verdict you are entitled to consider when defendant's plant was built and its business established, whether the land in the vicinity thereof was vacant land, or if occupied by residences, the extent to which it was then so occupied, the length of time defendant has conducted the same business at that place, * * * if growth or lack of growth of that vicinity in residences, factories or both, the proximity of an established railroad, the nature and importance of defendant's business and its influence on the growth and prosperity of the community."

The court, as already stated, did not have to give this in the exact language of the request, but an examination of the charge will show that he nowhere gave this, or the substance, or anything approaching the substance of this request, and we think, under the authority of the 68th OS. supra, this was grave error on the part of the court and was prejudicial to the interests of the plaintiff in error.

Now another request, number one, was sought to be given, which was to the effect that if the business were legitimate and they had exercised proper care, and did everything they could to eliminate noxious gases and used the most scientific methods, they would not be responsible, or words to that effect. Of course, from the view the prosecuting attorney takes of this case, that would not be important, but I wonder whether, by reason of the authorities already cited, the view of the law as voiced by this request was not, proper under the circumstances, remembering that the progress of a great city depends upon its industries, the livelihood of its citizens depends upon the chance of being employed, and so if a business, if legitimate and placed in an industrial center, or what is likely to become an industrial center, and there are no residences about it at the time and it does become an industrial center, I say, if that business is carried on with the most improved scientific methods and everything is done to eliminate the noxious vapors which might be deleterious to the health and property of those who moved into the vicinity, I wonder whether, under such circumstances, a person could be convicted of violating the statute. It seems that if that is so, then every industrial center is in danger of losing its industries.

So then the question is, Because a manufacturing plant that is carrying on a legitimate business, that is affording employment for thousands of Cleveland's citizens, that it is one of a thousand plants which makes Cleveland great, because all these taken together emit gases, fumes and noxious vapors in a city, and a plant that is otherwise carrying on a legitimate business, going into a part of the city uninhabited by any dwelling houses or undeveloped so far as dwelling houses are concerned, uninhabited by home dwellers, in an industrial center, surrounded by industrial plants, establishes a business involving millions upon millions of dollars, then because of the growth of the city, people live nearer and nearer to the plant, for the sake of the convenience of those people who move in that vicinity, shall a great plant be destroyed? Shall the business be stopped and thousands of men thrown out of employment, with all the after effects of such a happening? We do not think so. We do not think that a fair reading of this record will warrant the conviction of the plaintiff in error company.

We think that this case should be reversed on the ground that the verdict of the jury and the judgment thereon is not supported by sufficient evidence and is contrary to the weight of the evidence; that the court erred in refusing to charge as requested, perhaps not in refusing to give the charge in the words of the request, but because he did not properly cover it in his general charge.

We think, therefore, that the court should have set aside the verdict, and granted a motion for a new trial, and the judgment is reversed for error in not doing so, and because the verdict is contrary to the weight of the evidence and not supported by sufficient evidence and because of error in the charge of the court, and because the verdict and judgment thereon is contrary to law.

For these reasons the case will be reversed and remanded to the Common Pleas Court." (Sullivan, PJ., and Levine, J., concur.)