## MAYCOCK v. WHITE et al.

No. 5376.   Decided March 10, 1934.   (29 P. [2d] 934.)

*Critchlow & Critchlow,* of Salt Lake City, for appellants.
*Christenson & Straw,* of Provo, for respondent.

STRAUP, C. J.

The plaintiff, Maycock, brought this action against the defendants White as principal and the Indemnity Insurance Company as surety on a surety bond. It is alleged in the complaint that, in pursuance of chapter 38, Laws of Utah 1929, White was granted a license by the state agriculture board to engage in the business of a produce dealer as by

the act provided and in accordance therewith gave a surety bond in the sum of $2,500 conditioned that White would make full and complete settlement for any produce, as in the act defined, "handled by him"; that White in virtue of the license was engaged in the business of buying and selling fresh produce and while the license and the bond were in full force and effect the plaintiff between July, 1931, and September 20, 1931, "sold and delivered to the said J. O. White at Springville, Utah County, Utah, certain fresh fruit, to wit, peaches, of the agreed value of $790.80, and the said J. O. White purchased and received such peaches from this plaintiff and the said J. O. White *promised and agreed to pay this plaintiff for such peaches on delivery of the same* the sum of $790.80; that said J. O. White has not paid said sum of $790.80 or any part thereof, except the sum of $287.20 and that there is now due, owing and unpaid from the said defendant J. O. White to this plaintiff the sum of $503.60 together with interest thereon" (italics added), for which amount judgment was demanded. A copy of the bond was attached to the complaint and made a part thereof. No service of summons was had on White, nor was there any appearance made by him. The company was served and appeared in the action and demurred to the complaint on the grounds (1) for want of alleged facts to constitute a cause of action against the company; and (2) that, if the facts as alleged in the complaint be considered a violation by White of provisions of the act in pursuance of which the bond was given for a faithful performance of the provisions of the act, then the act is void as being in conflict with and repugnant to sections 1, 2, and 7 of article 1 of the state Constitution and the Fourteenth Amendment to the Constitution of the United States. The demurrer was overruled and the company given a stated time to answer. It failed to answer or further plead and hence judgment by default was entered against it. Evidence in support of the complaint was adduced on behalf of the plaintiff and findings made by the court in language of the complaint and in no particu-

lar other than or different from that stated in the complaint, especially as to the alleged transaction between the plaintiff and White in respect of the sale and delivery of the peaches. Judgment was rendered and entered accordingly in the sum of $503.60, with interest, from which the company has prosecuted this appeal. The case is here on judgment roll without a bill of exceptions. The assignments are predicated on the ruling overruling the demurrer and on the conclusions stated and judgment rendered on the findings; in other words, that there are neither pleadings nor findings to support the judgment.

The statute in question, chapter 38, Laws of Utah, 1929, is entitled, "Licensing of Produce Dealers." The first section provides that it is unlawful for any person, etc., "to engage in the business *of buying, selling or handling on commission,* fresh fruits and/or vegetables, hereinafter called produce, *other than at retail or in quantities less than carload lots,* except of his or its own raising, unless licensed by the State board of agriculture so to do." Section 2 authorizes the board to issue such licenses upon the payment of an annual fee of $25, to adopt rules and regulations, etc., and to revoke a license of a licensee who has been guilty of unfair or fraudulent dealing, or who has "failed within reasonable time *to render accounting and make settlement with any shipper or consignee whose produce he has handled on commission."* Section 3 provides that, before any license is issued, the applicant shall file a surety bond in the sum of $2,500 "conditioned that the principal will make full and complete settlement for any produce, as defined herein *handled by him,"* and that the license shall be displayed in a conspicuous place in the office or salesroom of the licensee. Section 4 provides that "every produce dealer shall *make and keep a full and complete record of all produce handled on commission by him,* covering the following facts: (a) The name and address of *the producer or shipper.* (b) *The date of receipt of each consignment.* (c) The kind and quantity of products received. (d) The agreed purchase price

or commission charged. (e) Date of sale. (f) Price at which sold. (g) An itemized statement of the charges to be paid by the producer in connection with the sale," and that "the above information *shall be furnished the shipper or consignor* and such record shall be subject to examination by the board or its representatives." (Italics added.)

A license under the act was granted to White. He filed a surety bond in the sum of $2,500 executed by himself as principal and by the defendant company as surety. Omitting the formal parts of the bond, it recites:

That White as principal and the company as surety "are held and firmly bound to the State of Utah in the sum of Twenty-five Hundred Dollars ($2500.00), for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, successors and assigns, jointly and severally, firmly by these presents.

"The condition of the above obligation is such, that whereas the above-named principal has applied to the State Board of Agriculture of the State of Utah for a license entitling said principal to conduct the business of produce dealer at the place of business named in the application (1415 Federal Way, Salt Lake City, Utah), from July 29, 1931, until January 1, 1932, in accordance with the provisions of an Act of the Legislature entitled 'An Act defining produce dealers, providing for the Licensing, Bonding and Regulation of same by the State Board of Agriculture, etc.,' * * *

"Now therefore, if said *principal shall well and truly comply with the provisions of the said Act* as such licensed produce dealer during the period of said license, *in accordance with the terms of said Act* and any and all amendments thereto, then this obligation is to be void; otherwise to remain in full force and effect." (Italics added.)

There are other provisions of the bond not here involved relating to a withdrawal by the surety from the bond. The bond was signed by White and by the defendant company, and was filed July 29, 1931. It in substance is the contention of the appellant that the facts and transaction as alleged in the complaint and as found by the court—that the plaintiff between July 29 and September 20, 1931, at Springville, Utah, sold and delivered to White fresh fruit, peaches,

at the agreed value of $790.80, that White purchased and received the peaches from the plaintiff and promised and agreed to pay such sum on delivery of the peaches, but failed to do so, except the sum of $287.20—do not characterize the act of White as that of a produce dealer as defined by the act, or as stipulated in the surety bond given in pursuance thereof, and that such alleged facts do not characterize the transaction as coming within the provisions of the act or as a breach of any of its terms or conditions or of the surety bond. On the other hand, it is the contention of the respondent that the facts as alleged bring the case within the provisions of the act, and more particularly that if White, as alleged and found by the court, was licensed as a produce dealer and engaged in the business of buying or selling fresh fruit or vegetables, a purchase of such produce by him whether on commission, consignment or otherwise, was within the act, and covered by the bond, and a failure on his part to pay the purchase price rendered the surety company liable on its contractual obligation created by the bond, regardless of whether the act is or is not constitutional. In other words, it in effect is the contention of the respondent that by the terms of the bond the company was rendered liable for a failure of White to pay the purchase price of any such fruit or vegetables purchased or handled by him.

We think the obligations of the bond are not as broad as contended for by the respondent. The bond expressly recites that it was given and conditioned on White's application for a license to conduct the business of a produce dealer in accordance with the provisions of "An Act defining produce dealers, providing for the Licensing, Bonding and Regulation of same by the State Board of Agriculture," and futher expressly provided that, if "the principal shall well and truly comply with the provisions of the said act as such licensed produce dealer," etc., during the term of such license and "in accordance with the terms of said act," then the bond was void; otherwise to remain in full force and effect.

It in effect is argued by the appellant that the act does not nor does the bond apply to a person buying or selling a quantity or quantities of fresh fruit or vegetables at retail, "or in quantities less than carload lots," that the act, and in pursuance of which the bond was given, applies only to quantities of carload lots bought or sold or handled on commission, and that there is neither allegation nor a finding that the quantity of peaches purchased constituted a carload or carload lots or a handling thereof on commission or consignment. It further, from a consideration of the whole act, is contended that a produce dealer, as defined by the act, is not every person engaged in the business of buying or selling fresh fruit or vegetables, but one engaged in the business of buying and selling in carload lots on commission or consignment. Such interpretation is deduced not only from language of the act already referred to, but also from language of section 2, that the license of a licensee may be revoked if he "has failed within reasonable time to render accounting and make settlement with any shipper or consignee whose produce he has handled on commission," the language of section 3, requiring a surety bond "conditioned that the principal will make full and complete settlement for any produce, as defined herein, handled by him," and by section 4, that every produce dealer is required to keep a full and complete record of all produce "handled on commission by him," covering the date of receipt of "each consignment;" and complying with other provisions stated in section 4; from which consideration, it is contended the act does not apply to a transaction of sale as alleged in the complaint and as found by the court, and, since liability on the bond is conditioned on the principal's failure to "comply with the provisions of the said Act," no liability on the bond is created.

We think the contention of the appellant must prevail. To give the act any other or different meaning, and such as is contended for by the respondent, renders the act of doubtful validity. *New State Ice Co.* v. *Liebmann,* 285 U. S. 262,

52 S. Ct. 371, 76 L. Ed. 747; *State* v. *Latham*, 115 Me. 176, 98 A. 578, L. R. A. 1917A, 480; *State* v. *Porter*, 94 Conn. 639, 110 A. 59.

We are of the opinion that the court below erred in overruling the demurrer and in rendering and entering judgment on the findings as made, and that, as urged, there are neither pleadings nor findings to support the judgment. In reaching such conclusion, we think, and as disclosed by the act, the fair intendment of the Legislature was to protect producers of fresh fruit and vegetables—perishable products— who in carload lots sold or delivered such products to dealers on commission or consignment, and that the act was not intended to apply to a mere sale of such products in quantities less than carload lots or otherwise than on commission or consignment. In such view, we think the act valid. Whether it also is valid if given the construction contended for by the respondent, we express no opinion.

The judgment of the court below is therefore reversed, and the case remanded with leave to amend the complaint if the plaintiff be so advised, and, if a sufficient amendment is made to bring the case as herein expressed within the act, to grant a new trial; otherwise, to dismiss the complaint. Costs to the appellant.

ELIAS HANSEN, FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.