STATE *ex rel.* PATTESON, GOVERNOR

*v.*

EDGAR B. SIMS, AUDITOR

(No. 10395)

Submitted May 29, 1951.   Decided June 19, 1951.

*William C. Marland,* Attorney General, *Homer W. Hanna, Jr.,* Assistant Attorney General, for relators.

*Milton S. Koslow,* for respondent.

HAYMOND, JUDGE:

In this original proceeding in this Court the petitioners, the Honorables Okey L. Patteson, Governor, D. Pitt O'Brien, Secretary of State, William H. Ansel, Jr., Treasurer, William C. Marland, Attorney General, James B. McLaughlin, Commissioner of Agriculture, as members of the Board of Public Works and individually in their own right, seek a writ of mandamus to require the Honorable Edgar B. Sims, Auditor of West Virginia, to make certain deductions from their salaries for the month of April, 1951, and to issue proper warrants on the State Treasurer in additional amounts equal to each of such deductions, for the purpose of paying such deductions and such additional equal amounts, as contributions to the federal social security fund, to enable the petitioners to obtain old age and survivors insurance coverage provided by the Social Security Act of Congress, as amended, pursuant to an agreement entered into between the State

of West Virginia and the Federal Security Administrator effective April 1, 1951, as to employees of the State.

Upon the petition, filed May 1, 1951, this Court issued a rule returnable May 29, 1951. On the return day of the rule the defendant filed his written demurrer to the petition, and this proceeding was submitted for decision upon the petition, the demurrer, and the briefs in behalf of the respective parties.

The petitioners are elective public officers of this State whose offices are created by Article VII, Section 1, of the Constitution of West Virginia. Their present terms of office expire in January, 1953; and their annual salaries are fixed by statute. Section 2, Article 7, Chapter 99, Acts of the Legislature, 1947, Regular Session. They are also members of the Board of Public Works which is composed of the petitioners and the Superintendent of Free Schools and the Auditor of this State. Section 1, Article 4, Chapter 5, Code, 1931. In connection with their salaries for the month of April, 1951, the petitioners submitted to the defendant, as Auditor, requisitions for the issuance by him of warrants on the State Treasurer for the payment of their salaries, with the request that there be deducted from the salary of each of them the amount required as his contribution to the federal social security fund. The defendant refused the request of the petitioners to deduct the proper amounts from their salaries for the month of April, 1951, and informed them of his refusal by letter dated April 19, 1951, which contained these statements:

"This is to advise you that on the transmittals submitted to this office to draw a state warrant for your salary for the month of April, 1951, I have deleted the deduction requested for your social security contribution for the reason that the constitutionality of the participation of Members of the Board of Public Works in this program, as elected officers of the State is questionable. The requirements of this new program, begun April 1, 1951, for employees of the State of West Virginia, would necessitate the State of West Virginia to provide matching funds equivalent to the

social security deduction made from your salaries.

"Article VI, Section 38, of the West Virginia Constitution provides that the salary of any public officer shall not be increased during his term of office. Your participation in the social security program during your current term of office would result in the State providing an amount to match your social security deduction. This matching amount above and beyond your salaries may run counter to the provisions of our state constitution above quoted as an unauthorized increase in salary to help provide for your retirement.

"I regret very much to do this, but it will probably be best, in the beginning of this program, to determine the legality of the participation of Members of the Board of Public Works in the social security program, by taking this matter to the West Virginia Supreme Court of Appeals * * * to test the constitutionality of the State's matching contribution for all constitutionally-elected officers, including myself. In signing the Social Security Agreement with the Federal Government, I signed insofar as I had authority to bind the State of West Virginia by virtue of the authority conferred on me by the State constitution and the various statutes.

"I am taking this same position in regard to the salaries of all Members of the Board of Public Works (except the Superintendent of Schools who is ineligible for social security coverage being covered by the State Teachers' Retirement System). * * *."

After the receipt of the foregoing letter from the defendant the petitioners instituted this original proceeding in this Court.

In substance the questions raised by the demurrer and presented for decision are: (1) Whether payments from a special legislative appropriation of state funds, as contributions to the federal social security fund, for the benefit of the petitioners who are elective state officers, increase their salaries during their current terms of public

office, contrary to Article VI, Section 38, of the Constitution of this State, which in part provides: "Nor shall the salary of any public officer be increased or diminished during his term of office"; and (2) whether deductions from their salaries during their current terms of office, for the same purpose, diminish such salaries in violation of the same constitutional provision.

For the purpose of extending to employees of the State and its political subdivisions and the instrumentalities of either, and to their dependents and survivors, the basic protection accorded to other persons by the old age and survivors insurance system embodied in the Federal Social Security Act, as amended from time to time, the Legislature at its regular session in 1949, enacted Chapter 123 of the Acts of that session. In Section 2, Article 7 of that statute, certain terms were used and defined. By that section the term "wages" means "all remuneration for employment as defined herein, including the cash value of all remuneration paid in any medium other than cash, except that such term shall not include that part of such remuneration which, even if it were paid for 'employment' within the meaning of the federal insurance contributions act, would not constitute 'wages' within the meaning of that act."; the term "employment" means "any service performed by an employee in the employ of the state, or any political subdivision thereof, or any instrumentality of either, for such employer, except service which in the absence of an agreement entered into under this act would constitute 'employment' as defined in section two hundred nine of the social security act."; the term "employee" includes an officer of the State, or one of its political subdivisions or instrumentalities; the term "state agency" means the State Auditor; and the term "federal agency" means such federal officer, department, or agency as is charged in behalf of the federal government, by federal law, with the particular federal functions referred to in the act in connection with that term.

Section 3, which relates to an agreement between this State and the federal agency, to the extent here pertinent,

is in these words: "(a) The state agency, with the approval of the governor, is hereby authorized upon enactment of applicable federal law, to enter on behalf of the state into an agreement with the federal agency, consistent with the terms and provisions of this act, for the purpose of extending the benefits of the federal old-age and survivors insurance system to employees of the state or any political subdivision thereof, or of any instrumentality of any one or more of the foregoing, with respect to services specified in such agreement, which constitute 'employment' as defined in section two of this act. Such agreement may contain such provisions relating to coverage, benefits, contributions, effective date, modification and termination of the agreement, administration, and other appropriate provisions as the state agency and federal agency shall agree upon, but, except as may be otherwise required by or under applicable federal law as to the services to be covered, such agreement shall provide in effect that:

"(1) Benefits will be provided for employees whose services are covered by the agreement, and their dependents and survivors, on the same basis as though such services constituted employment within the meaning of title II of the social security act.

"(2) The state will pay to the federal agency, at such time or times as may be prescribed by the applicable federal law or by regulation of the federal agency, contributions with respect to wages, as defined in section two of this act, equal to the sum of the taxes which would be imposed by sections one thousand four hundred and one thousand four hundred ten of the federal insurance contributions act if the services covered by the agreement constituted employment within the meaning of that act.

"(3) Such agreement shall be effective with respect to services performed after a date specified therein but shall in no event cover (a), in the case of state employees, any service performed prior to the beginning of the first calendar month after the date on which such agreement is

entered into, or (b), in the case of employees of a political subdivision or of an instrumentality of either the state or a political subdivision, any service performed prior to the beginning of the first calendar month after the approval of the plan submitted under section five.

" (4) All services which constitute employment as defined in section two and are performed in the employ of the state by employees of the state, shall be covered by the agreement."

Section 4 provides that every employee of the State whose services are covered by the agreement shall be required to pay, into the fund established by Section 6, contributions, with respect to wages, equal to the amount of tax imposed by Section 1400 of the federal insurance contributions act, which is sub-chapter A of Chapter nine of the federal internal revenue code, as amended from time to time, if such services constitute employment within the meaning of that act; that such contribution shall be collected by the State by deducting the amount of the contribution from wages as and when paid; and that failure to make such deduction shall not relieve the employee from liability to pay such contribution.

Section 5 deals with the extension of the coverage provided by the act to employees of political subdivisions and of state and local instrumentalities, and Section 6 establishes a special fund into which all contributions, interest, and penalties collected shall be paid and from which the custodian of the fund shall from time to time pay to the federal agency such amounts as may be directed by the state agency pursuant to agreement between it and the federal agency, and authorizes biennial appropriations to the fund, in addition to the contributions required to be collected and paid into it. In 1951 the Legislature authorized payment from the general revenue of the State of $40,000.00 and appropriated that amount "To match contributions of State employees for social security tax to June 30, 1951." Chapter 8, Title II, Section 1, paragraph 155, Acct. No. 598, Acts of the Legislature, 1951, Regular Session.

Thus far in this opinion attention has been directed in some detail to the recent legislation of this State relating to the extension to employees of the State and its political subdivisions and instrumentalities of the coverage provided by the federal social security system. It now becomes necessary, to the extent here pertinent, to refer to legislation of the federal government which deals with that subject.

The original Act of Congress, which established the social security system, was enacted and approved August 14, 1935. 49 Stat. 620, Chapter 531, 42 U. S. C. A., Chapter 7. Its purpose was to provide for the general welfare by establishing a system of federal old age benefits, and by enabling the several States to make more adequate provision for aged and other designated persons, and for the administration of state unemployment compensation statutes, to create a social security board, and to raise revenue. It consisted of eleven separate titles and is generally cited and referred to as the "Social Security Act." Title II made provision for the payment of monthly old age benefits to qualified persons when they attain the age of sixty five and for the payment of lump sums to the estate of a person who dies before attaining that age and to persons not qualified when they attain the age of sixty five; and all such payments were to be based upon and determined by the wages paid to employees after December 31, 1936. Title VIII imposed, in addition to other taxes, a tax upon the income of every employee equal to a stated percentage of his wages, which was fixed at 1% from 1937 to 1939, 1½% from 1940 to 1942, 2% from 1943 to 1945, 2½% from 1946 to 1948, and 3% after 1948, Section 801; and provided that the tax should be collected by the employer by deducting the amount of the tax from the wages of the employee as and when paid and that the employer should be liable for the payment of such tax. Section 802 (a). That Title of the Act also imposed upon every employer, in addition to other taxes, an excise tax, with respect to persons in his employ, equal to the same percentage of wages imposed upon the employee during

the same periods. Section 804. The constitutionality of these sections of Title VIII and of various sections of Titles II, III, and IX of the Social Security Act has been upheld by the Supreme Court of the United States. *Steward Machine Company* v. *Davis,* 301 U. S. 548, 57 S. Ct. 883, 81 L. ed. 1279, 109 A. L. R. 1293; *Helvering* v. *Davis,* 301 U. S. 619, 57 S. Ct. 904, 81 L. ed. 1307, 109 A. L. R. 1319.

The Social Security Act has been amended from time to time and its coverage broadened and extended by various Acts of Congress.

By an Act of Congress, passed August 28, 1950, cited as "Social Security Act Amendments of 1950," Public Law 734, 81st Congress, Chapter 809, 2d Session, 64 Stat. 514, 42 U. S. C. A., Section 418, the Social Security Act, as amended, was further amended and its scope enlarged. By Title I, Section 106, of the Act of 1950, Title II of the Social Security Act was amended by adding Section 218, the pertinent portions of which contain this language:

"Sec. 218 (a) (1). The Administrator shall, at the request of any State, enter into an agreement with such State for the purpose of extending the insurance system established by this title to services performed by individuals as employees of such State or any political subdivision thereof. Each such agreement shall contain such provisions, not inconsistent with the provisions of this section, as the State may request.

" (2) Notwithstanding section 210 (a), for the purposes of this title the term 'employment' includes any service included under an agreement entered into under this section.

" (b) For the purposes of this section: * * *

" (3) The term 'employee' includes an officer of a State or political subdivision. * * *.

" (e) Each agreement under this section shall provide:

" (1) that the State will pay to the Secretary of the Treasury, at such time or times as the Administrator may

by regulations prescribe, amounts equivalent to the sum of the taxes which would be imposed by sections 1400 and 1410 of the Internal Revenue Code if the services of employees covered by the agreement constituted employment as defined in section 1426 of such code; and

" (2) that the State will comply with such regulations relating to payments and reports as the Administrator may prescribe to carry out the purposes of this section." The section also prescribes in detail for the scope of the agreement and the nature of its terms and provisions, including effective dates and how and when it may be terminated.

Section 201, Title II of the Act of 1950, amends Sections 1400 and 1410, of the Internal Revenue Code, 26 U. S. C. A., Sections 1400 and 1410, which were derived from Sections 801 and 804 of the Social Security Act of 1935, and those sections, as amended, respectively provide that the tax imposed on the income of the employee, which by Section 1401 of that code is to be collected by the employer of the taxpayer by deducting the amount from the wages as and when paid, and the excise tax required to be paid by the employer with respect to persons in his employ, shall, with respect to wages received and paid, respectively, during the calendar years 1950 to 1953, inclusive, each be at the rate of 1½ per centum.

Pursuant to the foregoing state and federal statutes, an agreement, effective January 1, 1951, as to employees of political subdivisions, and effective April 1, 1951, as to employees of the State, was entered into between the State of West Virginia and the Federal Security Administrator which extended social security coverage to those groups, and under those statutes, and by virtue of the agreement, the petitioners, as state officers, are subject to their provisions and are entitled to the benefits which they afford, unless the amounts required to be collected by the State by deductions diminish, and the amounts which it is required and has agreed to pay to match such deductions increase, their salaries contrary to Article VI, Section 38, of the Constitution of this State.

The petitioners contend, and the defendant denies, that the deductions to be collected, and the contributions to be paid, by the State, as outlined above, are taxes. The defendant also insists that, if the payments required of the State from its public funds are taxes, the State of West Virginia is immune from such taxation by the federal government.

The deductions from wages of an employee and the payments required by Sections 1400 and 1410, respectively, of the Federal Internal Revenue Code, 26 U. S. C. A., Sections 1400 and 1410, as amended, are respectively designated by the provisions of these sections as an income tax imposed upon an employee and as an excise tax imposed upon an employer. Section 1400 declares that "In addition to other taxes, there shall be levied, collected, and paid upon the income of every individual a tax equal to the following percentages of the wages * * * received by him after December 31, 1936, with respect to employment * * * after such date" and then prescribes the rates with respect to wages received; and Section 1410, as amended, declares that "In addition to other taxes, every employer shall pay an excise tax, with respect to having individuals in his employ, equal to the following percentages of the wages * * * paid by him after December 31, 1936, with respect to employment * * * after such date", and then prescribes the rates with respect to wages paid. Chapter 8, Acts of the Legislature, 1951, Regular Session, appropriates the sum of $40,000.00 "To match contributions of State employees for social security tax to June 30, 1951."

The exactions imposed by Section 1400 and Section 1410 of the Internal Revenue Code have been held to be taxes. *Gillum* v. *Johnson,* 7 Cal. 2d 744, 62 P. 2d 1037, 108 A. L. R. 595; rehearing denied, 7 Cal. 2d 744, 63 P. 2d 810, 108 A. L. R. 595. In *Helvering* v. *Davis,* 301 U. S. 619, 57 S. Ct. 904, 81 L. ed. 1307, 109 A. L. R. 1319, with reference to Title VIII of the Social Security Act of August 14, 1935, Chapter 531, 49 Stat. 620, 42 U. S. C., Chapter 7 (Supp.), the Supreme Court of the United States uses this lan-

guage: "Title VIII, as we have said, lays two different types of tax, an 'income tax on employees,' and 'an excise tax on employers.' The income tax on employees is measured by wages paid during the calendar year. Section 801. The excise tax on the employer is to be paid 'with respect to having individuals in his employ,' and, like the tax on employees, is measured by wages. Section 804. * * *. The two taxes are at the same rate. Sections 801, 804. * * *. The income tax on employees is to be collected by the employer, who is to deduct the amount from the wages 'as and when paid.' Section 802 (a). * * *." In the same case, in sustaining the validity of the challenged tax on employers the Court said: "The tax upon employers is a valid excise or duty upon the relation of employment." In *Steward Machine Company* v. *Davis,* 301 U. S. 548, 57 S. Ct. 883, 81 L. ed. 1279, 109 A. L. R. 1293, the payments required of an employer of eight or more persons, by Title IX of the Social Security Act of August 14, 1935, 49 Stat. 620, Chapter 531, 42 U. S. C., Chapter 7 (Supp.), measured by prescribed percentages of the total wages payable to employees by the employer during the calendar year with respect to such employment, were held to be a valid excise tax within the power conferred upon Congress by Article 1, Section 8, of the Constitution of the United States to lay and collect duties, imports and excises. In upholding the tax the Court rejected the contentions of those who assailed its validity that it was not laid with uniformity, that it violated the Fifth Amendment to the Constitution of the United States because of the force of its exemptions, and that it involved coercion of the States in contravention of the Tenth Amendment to the Constitution or of restrictions inherent in the federal form of government. In *Christopher* v. *James,* 122 W. Va. 665, 12 S. E. 2d 813, this Court held that deductions made by a taxpayer under the Social Security Act were not deductions of expenses of business permitted by a state income tax statute in force in this State in 1937, but since repealed, and, in discussing the character of such payments, used this language: "The Social Security Act of

August 14, 1935, imposes monetary exactions on employers of labor. 42 U. S. C. A., sec. 1004. In 1939 this section was amended in respect of rates. 26 U. S. C. A., sec. 1410. In both enactments the Congress had denominated these exactions as taxes. The Supreme Court of the United States has upheld these impositions on employers as excises within the constitutional power of the Congress. *Steward Machine Company* v. *Davis, Collector,* 301 U. S. 548, 57 S. Ct. 883, 81 L. Ed. 1279, 109 A. L. R. 1293; *Helvering, Commissioner,* v. *Davis,* 301 U. S. 619, 57 S. Ct. 904, 81 L. Ed. 1307, 109 A. L. R. 1319." Contributions required of employers of labor by the provisions of state unemployment compensation statutes have also been held to be valid excise taxes. *State of West Virginia ex rel. Department of Unemployment Compensation* v. *Continental Casualty Company,* 130 W. Va. 147, 42 S. E. 2d 820; *Beeland Wholesale Company* v. *Kaufman,* 234 Ala. 249, 174 S. 516; *Carmichael* v. *Southern Coal and Coke Company,* 301 U. S. 495, 57 S. Ct. 868, 81 L. ed. 1245, 109 A. L. R. 1327.

The question whether an income tax upon the salaries of federal judges diminished such salaries in violation of Article III, Section 1, of the Constitution of the United States has been before the Supreme Court of the United States in several cases. That section in part provides that "The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behavior, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office." In *Evans* v. *Gore,* 253 U. S. 245, 40 S. Ct. 550, 64 L. ed. 887, 11 A. L. R. 519, and *Miles* v. *Graham,* 268 U. S. 501, 45 S. Ct. 601, 69 L. ed. 1067, that court held that the imposition of a tax upon the gross income of a federal judge diminished his salary and was forbidden by the above quoted constitutional provision. In the *Miles* case the court said: "The power of Congress definitely to fix the compensation to be received at stated intervals by judges thereafter appointed is clear. It is equally clear, we think, that there is no power to tax a judge of a court of the United States on account of the salary prescribed

for him by law." In the later case of *O'Malley* v. *Wood-rough,* 307 U. S. 277, 59 S. Ct. 776, 83 L. ed. 1289, however, the court reached a different conclusion, disapproved or overruled its former decisions on that point, including the *Gore* and *Miles* cases, and held that the imposition of an income tax on the salary of a federal judge is not within Article III, Section 1, of the Constitution of the United States which forbids the diminution of the salary of such judge during his term of office. The *O'Malley* case is the most recent pronouncement of the Supreme Court of the United States on that point, constitutes the law as recognized and declared by that court, and will be adhered to and applied by this Court in this proceeding.

It is clear from the foregoing authorities that the deductions from the salaries of the petitioners and the payments to match them out of state funds exacted and required to be paid into the social security fund, by Chapter 123, Acts of the Legislature, 1949, Regular Session, and by the above cited federal statutes, are valid income and excise taxes. It is equally clear, from the *O'Malley* case, that they are not a part of, but exist separately and apart from, the salary of each of the petitioners as a public officer of this State; and that the collection and the payment of these taxes do not increase or diminish such salary within the meaning of Article VI, Section 38, of the Constitution of this State.

The contention of the defendant that this State is immune from the imposition upon it by the federal government of the taxes here involved is not tenable. Though, without its consent, a State is exempt from taxation by the government of the United States, the State may remove that immunity. *United States* v. *Bekins,* 304 U. S. 27, 58 S. Ct. 811, 82 L. ed. 1137. In that case the Supreme Court of the United States said: "While the instrumentalities of the national government are immune from taxation by a State, the State may tax them if the national government consents *(Baltimore National Bank* v. *State Tax Comm'n,* 297 U. S. 209, 211, 212) and by a parity of reasoning the consent of the State could remove the

obstacle to the taxation by the federal government of state agencies to which the consent applied." This State, by the action of its Legislature in enacting Chapter 123, Acts of the Legislature, 1949, Regular Session, and by the action of its authorized agency, with the approval of the Governor, in entering into the agreement with the Federal Security Administrator, has consented to the payment of the taxes imposed upon it by the federal government, and in so acting it has removed the immunity from such taxation of its agencies to which its consent applies.

For the reasons stated the writ of mandamus, as prayed for in the petition, is awarded.

*Writ awarded.*