# HANSEN et al. v. PUBLIC EMPLOYEES RETIREMENT SYSTEM BOARD OF ADMINISTRATION et al.

No. 7843. Decided June 3, 1952. (246 P. 2d 591.)

See 20 C. J. S., Counties, sec. 130. Vested interest of pensioner in pension. 40 Am. Jur., Pensions, sec. 24; 112 A. L. R. 1009.

*Frank E. Moss,* County Atty., Joseph C. Fratto, Salt Lake City, for appellants.

*Clinton D. Vernon,* Atty. Gen., *Brigitte M. Bodenheimer,* Sp. Asst. Atty. Gen., for respondents.

CROCKETT, Justice.

John Hansen and his employer, Salt Lake County, joined as plaintiffs herein to challenge the validity of Chapter 21, Laws of Utah 1951, Special Session. The purpose of that act, stated generally, was to repeal the laws relating to the State Retirement System, liquidate it, and transfer public employees to coverage under the Federal Social Security Act as permitted by the Social Security Act Amendments of 1950, 42 U. S. C. A. § 301 et seq.

The plaintiffs assert that the Repeal Act is invalid because:

(1)   It attempts to abrogate vested rights of Hansen;

(2)   It is unreasonably discriminatory;

(3)   It arbitrarily imposes onerous and undeterminable obligations on Salt Lake County without providing any means to meet them;

(4)   The act is so vague and uncertain that it is not susceptible of interpretation and administration and is therefore inoperative.

The state retirement system was created originally by Ch. 131, Laws of Utah 1947. State officers and employees (certain exceptions not material here) were to pay into the retirement fund 3% of their salaries, not to exceed $9 per month which the state was to match. Pensions were set up, varying according to years of service, age at retirement and salary. The minimum years of service at which one could retire was 20 and the maximum pension was $100. The above mentioned act was revised and practically rewritten as Ch. 90, Laws of Utah 1949. The changes

significant to our consideration were that it reduced the years of service required for retirement at age 65 from 20 to 15 years and permitted other public employing units to join the system. A new section 15.1 provided:

"Any county, city, town or other employing agency * * * of the state of Utah, by resolution * * * and the affirmative vote of at least fifty percent (50%) of its full time employees may participate in and become a part of the retirement system in this act provided."

Under this section, Salt Lake County and its employees, including John Hansen, became participants in and contributors to the public employees retirement system. The act was again amended by Ch. 115, Laws of Utah 1951, increasing the contributions of participants in the fund from 3% to 5% of the salary, but not to exceed $15 per month.

Meanwhile, our national Congress had enacted the Social Security Act Amendments of 1950, Public Law 734, 81st Congress, greatly expanding the coverage permitted under the system. Section 218 was added to Title II of the Social Security Act, 42 U. S. C. A. § 418, providing that the Federal Security Administrator:

"* * * shall, at the request of any State, enter into an agreement with such State for the purpose of extending the insurance system established by this title to services performed by individuals as employees of such State or any political subdivision thereof. * * *"

for which the State is required to pay to the Secretary of the Treasury taxes as specified to contribute its share of the expenses for participation in that system.

This act also provided that state contracts so concluded before January 1, 1953 could be made retroactive to January 1, 1951, which is the new starting date for the computation of benefits. It seemed desirable for a number of reasons to get the public employees under the protection

of the federal security system and to do so soon enough to take advantage of this retroactive feature assuring employees the maximum benefits obtainable.

Coverage under the federal act, in addition to retirement benefits, provides protection for surviving widows and minor children. It also makes possible the continuous retirement coverage of the employee whether in government service or private industry, whereas the State system provides for retirement benefits only. Upon death before retirement, the only benefit to heirs is repayment of contributions without interest. The State system did provide for a disability compensation and also for a maximum pension of $100 a month, which in some instances would provide a single person, having no dependents, the maximum, or $100 a month, as against the maximum of $80 a month for such person under the federal system. However, under the federal system, if the employee were married, his wife at age 65 would also receive one-half his primary benefits, or $40 a month, making a total of $120 a month, with additional benefits payable for dependent children up to a maximum of $150 a month. Further, if a covered worker dies and leaves a widow and minor children, they can draw monthly payments up to a maximum of $150 a month, plus a death benefit payment of three times the monthly benefit. Under the federal system the cost to the employee and to the State is 1½% of the employee's salary to each, as compared to 5% under the State system.

It was for the express purpose of obtaining this coverage for public employees in our State and taking timely advantage of the federal offer for retroactive coverage above referred to, that the Utah legislature in its 1951 regular session enacted Ch. 90, S. L. U. 1951, hereinafter referred to as "the Enabling Act." It, sec. 8 designates the finance commission as the state agency to be known as the Utah State Social Security Agency with authority to administer the act; and, sec. 3 with the approval of the Governor, to contract with the federal security administrator,

to make payments equal to social security taxes to the Secretary of the Treasury; it requires, sec. 4 covered employees to pay social security taxes to be collected by way of payroll deductions, and sec. 5 makes detailed provision for the optional participation of political subdivisions and their employees in the federal social security system. The constitutionality of similar enabling legislation has been upheld including the granting of permission to the United States to tax the state for this purpose. *State ex rel. Patteson* v. *Sims*, W. Va. 1951, 65 S. E. 2d 730.

The State itself in some of our counties were already under the state public employees retirement system and therefore could not qualify for inclusion in the federal system because of sec. 218(d) of the Social Security Act, which provides that:

"No agreement with any State may be made applicable (either in the original agreement or by any modification thereof) to any service performed by employees as members of any coverage group in positions *covered by a retirement system on the date such agreement is made applicable* to such coverage group." (Emphasis added.)

which has been given the following administrative interpretation:

"1. If the State or political subdivision has had a retirement system, it will no longer be considered to have such a system for the purpose of Section 218(d) of the Social Security Act if (a) the system has been fully liquidated and provision has been legally made for the settlement of previously accrued rights by means of refund of contributions, or purchase of annuities, or statutory segregation of accumulated equities, *and* (b) any benefits based on accumulated equities do not depend on future employment.

\* \* \* \* \*

"3. Where a State or local retirement system has been dissolved, an agreement entered into subsequent to such dissolution may be retroactive within the limits prescribed by law, over a period in which the positions affected were under the previously existing retirement system. The State may choose whether to cover only prospectively, or to cover also retroactively those coverage groups all or a part of which had been previously covered by a State or local retirement system."

Accordingly, the state and public employing units already under the state system could qualify for social security only if the state system were dissovled and any future coverage thereunder terminated. To accomplish this purpose, the legislature in its 1951 special session enacted Ch. 21, herein referred to as the Repeal Act, disolving the existing retirement system, providing for its liquidation, and laying down rules for the administration thereof during such process. In effect it creates a "freeze" of the benefits accrued to employees as of June 30, 1952 so that no additional equities will accrue under the State system after that date, as required by the federal law and the administrative interpretation thereof as above set forth.

In providing for the liquidation of the State system, it seemed necessary and advisable for the legislature to make some provision for employees formerly covered thereunder. The act divided them into three classes:

First, those who had already retired. Their rights were preserved and in no way affected and therefore we are not here concerned with them.

Second, employees who have ten years or more of public service prior to July 1, 1952; to them, it assures certain benefits accrued under the State system up to that date. Although it was necessary under the State system for an employee to have a minimum of 15 years' service for retirement, even after he had reached the required age and other conditions had been met, the legislature chose to go below the 15 year minimum and to preserve to employees having 10 years or more, certain advantages that had accrued to them under the old system. No objection is raised that the vested rights of this class are impaired or that they are improperly discriminated against. To the contrary, the complaint is that the act too generously deals with them, which point will be referred to later in connection with the question of discrimination and the rights of the County.

Third, the employees having less than 10 years of public service, to which plaintiff Hansen belongs. It is upon the basis of what the Repeal Law does to him and that class, that the Act is assailed as abrogating vested rights and being unreasonably discriminatory. Hansen and any other member of his class are given the options to:

"(a) Receive repayment of his contributions into the public employees retirement fund less his share of the contributions under the Federal Social Security Act on his wages from the period commencing January 1, 1951, and ending June 30, 1952, plus interest at the rate of two-and one-half per cent from date of payment; or

"(b) Receive a paid-up annuity in the value equal to his employee contribution, plus the matching contribution paid by his employer, less the employee's and the employer's share of the contribution, under the Federal Social Security Act for the period commencing January 1, 1951 and ending June 30, 1952; * * *"

It is thus clear that, except for the share for his coverage under social security, for the period commencing January 1, 1951 to June 30, 1952, he is entitled to repayment of all of his contributions made to the fund, plus 2½% interest thereon from date of payment, or in the alternative he may receive a paid up annuity equal to the value of both his own contributions and the matching contributions paid by his employer.

In contending that the Repeal Act abrogates his vested rights, Hansen places reliance on the case of *Driggs* v. *Utah State Teachers Retirement Board*, 105 Utah 417, 142 P. 2d 657. Therein this court held that a retired teacher had a vested right to receive his pension from the defendants' system free from reduction in amount as prescribed by subsequent acts of the legislature changing the formula by which said pensions were to be computed. The plaintiff had continued in employment in reliance upon the proffered pension, contributed to the fund, had given the required years of service, attained the retirement age, had in fact retired, applied for his retirement allowance and was

receiving it. The court stated: at page 434, 105 Utah Reports, at page 664 of 142 P. 2d,

"If the teacher's rights are ever to 'vest,' it must be 'when he has completed every condition required of him precedent to the receipt of his pension." citing cases.

In the recent case of *Newcomb* v. *Ogden City Public School Teachers Retirement Commission*, 121 Utah 503, 243 P. 2d 941, we referred with approval to the *Driggs* case, supra, and the expression therein is the extent to which rights in a pension have been recognized by us as vested. For a discussion of such rights, see the *Driggs case.* See also the annotations in 54 A. L. R., 943; 98 A. L. R. 505; 112 A. L. R. 1009, and 137 A. L. R. 249.

Retirement and pension systems are growing into more general use in this country, but in many respects have not outgrown their formative and experimental stage. If the legislature could bind the State absolutely and irrevocably to any pension plan it should offer until the last employee performing any service under it had retired and died, it would definitely tend to discourage the creation of pension systems. This would also apply to private employers; the financial hazard and responsibility to them would be so great that they undoubtedly would hestitate to establish pension plans. Such a view of the law as advocated by plaintiffs might, instead of improving the lot of employees who should be protected by pensions or retirement systems in their old age, in fact ultimately defeat the very purpose of pension systems by making them impractical. The need for a reasonable degree of flexibility, permitting reforms, reorganizations and the utilization of advances in knowledge and experience, appears to us to be an important consideration in legislation dealing with retirement and old age insurance systems. To establish a bar to changes in them would in many instances bar progress.

The overwhelming weight of authority is that an employee such as Hansen who has neither served the neces-

sary years to qualify for a pension, nor attained the retirement age, has no vested right in the pension or the retirement system.

The only case cited by plaintiffs, or which has come to our attention, at variance with the foregoing rule is that of *Kern* v. *City of Long Beach,* 29 Cal. 2d 848, 179 P. 2d 799 which held that a public employee who had come within 32 days of the 20 years of service required when the pension law was repealed, had acquired a vested right to receive his pension. It is obvious that the unusual facts in the *Kern* case led the court to that conclusion in order to protect the plaintiff from what appeared to be a patent injustice. We note that subsequent California decisions have recognized the necessity of restricting the application of that doctrine. See *Palaske* v. *City of Long Beach,* 1949, 93 Cal. App. 2d 120, 208 P. 2d 764, and *Allstot* v. *City of Long Beach,* 1951, 104 Cal. App. 2d 441, 231 P. 2d 498, wherein the California court held that the retirement system of the City of Long Beach could be so modified as to freeze pensions at one-half the salary by not permitting further years of service towards an increased allowance of two-thirds of the salary as formerly permitted. See also *Allen* v. *City of Long Beach,* 101 Cal. App. 2d 15, 224 P. 2d 792, and *Packer* v. *Board of Retirement,* 35 Cal. 2d 212, 217 P. 2d 660.

It is apparent that California does not regard the rights in a pension prior to the fulfillment of conditions as "vested" in the true sense of the word. They recognize the necessity for the flexibility above referred to and permit changes, including reduction of benefits, so long as a substantial substitute is provided. See particularly the following statement by the Supreme Court of California in the *Packer* case, supra, 217 P. 2d at page 664 that:

"A different rule, in fact, would remove a considerable amount of the flexibility necessary for operation of pension systems, * * *."

and might make it

"* * * impossible or impracticable for the governmental body to substitute a new system, designed to meet changing conditions * * *."

For reasons which are hereinabove set forth, we are not inclined to follow the rule set forth in the *Kern* case that an employee acquires vested rights in a pension system prior to the fulfillment of the conditions required. However, we observe that it may well be that under ■ some circumstances, there should be some restraint upon the harshness and injustice which could eventuate from permitting wholly unreasonable and arbitrary encroachments upon the advantages which may have accrued to employees who have worked out substantially all of the necessary conditions prerequisite to qualifying for a pension. But no such problem is presented here.

The plaintiff Hansen had neither served the time requisite to entitle him to retire and receive a pension, nor had he attained retirement age: Therefore, we hold that he had no vested rights in a pension there- ■ under or in the retirement system. What he did have as correctly determined by the trial court, was the right to the withdrawal of his contributions.

As to the retention of part of Hansen's contributions as his share of social security coverage from January 1, 1951 to June 30, 1952: They serve the purpose of making him a currently insured individual so that he would be entitled immediately to the protection of survivor's benefits and also establish coverage from January 1, 1951, an additional 18 months, which will result in higher benefits upon retirement. If his employing unit (Salt Lake County) joins the federal system, he would otherwise have had to pay this share out of his own pocket. If it does not do so, then there is nothing that can properly be considered his "share of the contribution" under the Federal Social Security Act, within the meaning of Sec. 5 of the Federal Law,

and he is thus entitled to receive his contributions which otherwise would have provided for such coverage.

The fact of the matter is that the Repeal Act considerably augmented his rights. In addition to the right of withdrawal, as just indicated, he now has the further right to receive interest and also the privilege of electing to accept an annuity based on his own contributions, plus the contributions made for him by his employer. In addition to this, the new act will undoubtedly soon confer upon him the benefits of the Federal Social Security System, which, although not the exact equivalent, when coverage for himself and his dependents is considered, is certainly not less than a "substantial substitute" for what he formerly had.

What plaintiff Hansen is actually complaining about seems to be not so much the fact that he loses any vested rights, but the real basis of his complaint would seem to be that other employees having a greater period of service are treated better than Hansen and the class to which he belongs having less than 10 years service. This brings us to the next proposition upon which the constitutionality of the Repeal Act is assailed; that is, that it is unreasonably discriminatory.

As to discrimination: An act is never unconstitutional because of discrimination so long as there is some reasonable basis for differentiation between classes which is related to the purposes to be accomplished by the act. And it applies uniformily to all persons within the class. *State* v. *Mason*, 94 Utah 501, 78 P. 2d 920, 117 A. L. R. 330; *Slater* v. *Salt Lake City*, 115 Utah 476, 206 P. 2d 153, 9 A. L. R. 2d 712. Plaintiffs do not question that all employees in the same class, that is, all persons with less than ten years of service, are being treated alike by the Repeal Law. Their position seems to be that these employees should have been granted the same rights as those having more than ten years of service. In other words, they contend that there is no reasonable basis for awarding greater rights to the employees having a longer

period of service. They do not suggest any other period which may have been a reasonable classification, so·we are left to assume that any attempted classification on the basis of time served would be claimed by them to be arbitrary and unreasonable and therefore unconstitutional.

The difficulties which would have eventuated if all of the employees who had ever worked for the county and contributed to the retirement fund were given the rights provided for under Sec. 6 to 10 of the Repeal Act are manifest. It would have created a tremendous ■ additional financial burden to maintain the necessary administrative machinery and to pay benefits until all such employees had finally retired and died. Such a burden would have been so impractical as to be prohibitive. That administrative convenience and expense are important factors which the Legislature may properly consider in making a classification, see *Carmichael* v. *Southern Coal & Coke Co.*, 301 U. S. 495, 57 S. Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327. Under our conception of the law, the conferring of benefits to all employees would not have been legally required, and it is not for us to say whether the Legislature should have brought the class of beneficiaries below the ten-year line on the basis of fairness to the employees in discharging a moral obligation.

In attempting to arrive at some fair and practical method of liquidation of the state system, the Legislature was confronted with the necessity of giving consideration to the protection of the rights which may have already vested and the preservation of some benefits to those employees who, because of long and faithful service, were due some recognition. Accordingly, as hereinabove set forth, the Act classified the employees into three groups and granted them rights on the basis of their years of service.

No matter where the line is drawn, whether it be 15 years, 10 years, 8 years, or any other place, the classification will undoubtedly seem harsh and unreasonable to

those who are excluded just below the line. Some such inequities are practically inevitable in all retirement systems, especially in the first years of their operation. Unless some arbitrary dividing line were permitted, if the matter were carried to its logical conclusion, the line would have to be pursued down to one year, six months, three months, and finally to any one who had ever worked for the county for any period of time or made any contribution to the fund.

It was therefore essential that some classification be made. It may have been unnecessary for the Legislature to go from 15 years, the minimum time for retirement, and reach down into another class of employees having between 10 and 15 years of service, and confer added benefits on this new class. However, there are at least some reasons which may be pointed to as seeming to justify preserving some advantages to employees having 10 years or more of service. Section 8 of the old act provided that in case of disability, regular retirement benefits should be paid to any employe who had 10 years of service. Furthermore this group of employees were considerably closer to the minimum time to be entitled to a pension upon the fulfillment of other conditions. If the Legislature deemed it advisable to recognize those facts and their long years of service and not entirely wipe out the advantages then existing for them, it was within their prerogative to do so.

"In fixing the limits of the class, the legislative body has a wide discretion and this court may not concern itself with the wisdom or policy of the law. Our function is to determine whether an enactment operates equally upon all persons similarly situated. If it does, then the discrimination is within permissive legislative limits." *Slater* v. *Salt Lake City, supra; Schreiber* v. *Cook County*, 388 Ill. 297, 58 N. E. 2d 40, 155 A. L. R. 1162.

And, as stated by Mr. Justice Wade in *Wallberg* v. *Utah Public Welfare Commission*, 115 Utah 242, 203 P. 2d 935, 946,

"The fact that the borderline cases * * * may not be distinguishable does not render the whole classification unjust discrimina-

tion * * *. It is often necessary in order to make classifications to draw an arbitrary line between the two classes."

Classification for purposes of liquidation of the retirement system may properly be on a different basis than the system itself if fundamental rights are not violated. Length of service is a fair and logical criterion ▪ by which to classify employees under retirement systems and the liquidation thereof. See *Allstot* v. *City of Long Beach*, supra; for annotations relating to discrimination in retirement legislation, see 163 A. L. R. 870 and 7 A. L. R. 2d 694.

It might well have been sufficient for the Legislature to have merely provided for the supplementing of Social Security benefits up to the amount that the beneficiary would have received under the State system. ▪ But the wisdom or propriety of the legislation is not for us to consider. As stated in the case of *Kimball* v. *City of Grantsville City*, 19 Utah 368, 57 P. 1, 5, 45 L. R. A. 628,

"There is, without doubt, plenty of room, within the pale of the constitution, for ill-advised legislation * * *. That is a matter between the people and the representatives." See also *State ex rel. Breeden* v. *Lewis*, 26 Utah 120, 72 P. 388; *Utah Mfrs.' Ass'n* v. *Stewart*, 82 Utah 198, 23 P. 2d 229.

Within the limits of the constitution it is the prerogative of the legislature to control such matters, and the fact that an act may be ill advised or unfortunate, if such it be, does not give rise to an appeal from the legislature to the courts for correction. *Chicago & G. T. R. Co.* v. *Wellman*, 143 U. S. 339, 12 S. Ct. 400, 36 L. Ed. 176. Under our system of government it is important that each branch thereof avoid infringement upon the prerogatives of the other.

If as a result of the liquidation of the state system and the transition into social security coverage, a limited number of older employees may happen to receive extraordin-

ary benefits, this is due to the provisions of the federal law rather than to the State Repeal Act. The Social Security Amendments of 1950 extended to persons already 65, or close to it, a one-time opportunity to qualify for benefits in as little as 18 months. This is a temporary phenomenon of that law applicable to the transition period only. While we are not called upon at this time to concern ourselves with the question of double benefits, if such be the case, such benefits would not be conferred by the Repeal Act, but would be endowed under the advantages allowed under the federal act over which the state has no control. This does not in any way adversely affect the rights of the plaintiff Hansen nor the County. The classifications set up in the Repeal Act were within the powers of the legislature; they do not violate the principles hereinabove set forth.

Plaintiff Salt Lake County asserts that its rights have been violated because: (a) The Repeal Act, by granting benefits to employees of only ten years' service, instead of the minimum of fifteen years required in the retirement law, created a new class of beneficiaries which the county will have to pay but provides no means for it to do so, which imposes upon it an undeterminable and insuperable burden; (b) The Act does not provide for a return to the county of contributions made to the retirement fund, and (c) It presumes to arbitrarily bind the county to a contract with the Federal Security Administrator. The County points to no constitutional provisions, however, which indicate any limitation upon the power of the legislature to enact the repeal law. The county is a part of the state and is subject to the control of the Legislature. It acquired no rights under the retirement law. See 1 McQuillan Municipal Corporation, 2d Edn. Sec. 186; *Sangir* v. *City of Bridgeport,* 124 Conn. 183, 198 A. 746, 116 A. L. R. 1037. It has no rights or immunities which it may claim as against the state unless expressly so provided by the state constitution.

The objection of the county to what it calls an unliquidated debt, undeterminable in amount, and the addition of a new class of beneficiaries, is one which can properly only be addressed to the Legislature. It does not raise a question for determination by the court. In *Salt Lake County* v. *Salt Lake City*, 42 Utah 548, 134 P. 560, an act providing for county detention homes to be financed by counties and cities was held to be valid; *Denver & R. G. R. Co.* v. *Grand County*, 51 Utah 294, 170 P. 74, 8 A. L. R. 1224, held constitutional a dependent mother's act financed by counties; and in *Axberg* v. *City of Lincoln*, 141 Neb. 55, 2 N. W. 2d 613, 141 A. L. R. 894, it was held to be within the power of the Legislature to require cities with home rule charters to pay pensions to their firemen.

In the foregoing cases entirely new functions and new financial obligations were created. In the instant case, however, the county is only required to do its part in the orderly liquidation of a combined State and County project which the county voluntarily entered into and which is now being brought to an end. As to the obligation being of an undetermined amount, even under the old system, the county could not at any time be sure as to the amount it would have to pay in for the benefit of the recipients of the retirement fund. Its matching contribution had been raised from three per cent originally, to five per cent in 1951; the minimum service at which an employee had a right to retire was reduced from 20 to 15 years; and from 15 to 10 years for disability benefits. Likely other changes were to be expected had the system remained in effect.

As to the county's complaint that the act does not provide for any refund of its payments into the fund, the same principles as above set forth apply; this likewise does not pose a constitutional problem. It must also be remembered that the county's obligation under the old system had not been discharged, and will not be until the last employee with claims under the system has been paid. As to future contributions, it cannot be assumed that under Sec. 20

the Board of Trustees will require the county to pay in more than is necessary to take care of the claims of the employees for which it is responsible. And even if such should be the case, it would again be a legislative problem.

As to the county being compelled, without its volition, to become bound under a state contract with the Federal Security Administrator, in view of what appears to be the advantages of social security—lower rates, facility in keeping employees under coverage who may change jobs, and the security of being part of the much greater system, it seems unlikely that the county will be much troubled in making its choice. As a matter of fact, it does not represent in this proceeding that it does not want to join and be covered under the Federal system. It merely seems to say: What if we didn't want to, would we have to? The question could well abide until the problem actually arises, if and when the county decides not to join, and then deal with the question of whether the law does compel it. However, we observe, that under the plenary powers the state has respecting its component parts, in the absence of any express constitutional limitation, there seems to be no reason why the Legislature could not provide that a county be bound by a contract with the Federal Security Administrator. We further observe, that the Enabling Act, Chap. 90, S. L. U. 1951, made it clear that if the counties were to enter Federal Social Security, it would be by voluntary action in submitting a plan for approval, see Sec. 5. The difficulty in interpretation arises because later, the Legislature in the Repeal Act, Sec. 19, provided:

"The Utah State Security Agency and the Governor shall, * * * take all steps necessary to consummate an agreement with the Federal Security Administrator providing coverage *for all public employees* * * *."

Without going into the detail of analyzing and correlating these statutes, it seems sufficient to say that Sec. 19 quoted above must be read and understood in relation to,

and harmonized with then existing statutes. If this is done, it will be seen that there is no clear intent, either express or implied, to modify or repeal Sec. 5 of the Enabling Act which continues to govern county participation in the Social Security System on a voluntary basis.

The problem just mentioned constitutes the principal contention made by the plaintiffs that the act is so vague and uncertain that it is not susceptible of intepretation and administration so that is inoperative. Another point raised by the plaintiffs under that contention ■ is that the County says it is impossible to determine whether it should continue after July 1, 1952, to make payroll deductions from salaries of employees with more than ten years of service. It is plain to be seen from the fact that the benefits to all state employees, including those with more than ten years of service, are frozen and state coverage ceases, that no further contributions are required. Therefore even though the Repeal Act does not expressly so state, from its Sec. 23, which repeals the law establishing the Retirement System, and the amendments thereto, it is clear that Sec. 3 of the Retirement Law providing for salary deductions is also repealed. The only future deductions to be made will be for social security.

The Repeal Act, Chap. 21, Special Session 1951, is hereby declared to be constitutional and valid. The judgment of the trial court is affirmed. No costs are awarded.

WADE and McDONOUGH, JJ., concur.

WOLFE, Chief Justice (concurring in the results).

I concur in the results reached in the majority opinion. While I agree with much of the reasoning of Mr. Justice Crockett, I prefer to state separately my reasons for resolving the two main contentions of the appellants against them.

As to the contention that the Repeal Act impairs vested rights of Mr. Hansen to receive a pension upon retirement,

it should be observed that under *Driggs* v. *Utah Teachers' Retirement Board,* 105 Utah 417, 142 P. 2d 657, and all other retirement cases heretofore decided by this court, no vested rights accrue until the employee has fulfilled all the conditions precedent to the entitlement of a pension, viz. attained a certain age; been in employment a requisite number of years; made the required contributions from his salary; etc. The holding out to an employee by an employer that if he will serve him for a requisite number of years and make the required contributions from his wages, he will be given a pension upon reaching a certain age, constitutes an offer, a valid acceptance to which is made only by meeting and fulfilling all of the conditions imposed. Until all the conditions precedent have been met, there is no contractual obligation between the employer (in this case the State and the County) and the employee. The Legislature in the instant case by providing for the liquidation of the State retirement system has prevented Mr. Hansen from accepting his employer's offer by timely withdrawing it prior to its acceptance by Mr. Hansen. The only persons who have vested rights in the system are the retired employees. No contention is made in this case that the Legislature has abrogated their rights. But as to employees who have not yet met the conditions precedent to the receipt of a pension, the Legislature was under no restraint in providing for the liquidation of the retirement system, except that they were entitled to a return of their contributions.

The contention of the appellants that the Repeal Act unreasonably discriminates between employees having less than ten years of service and employees having more than ten but less than fifteen years of service, must fail. Appellants argue that the Legislature should have treated both class of employees alike and not conferred greater benefits on one class than the other class. With respect to this contention, it should be borne in mind that the Legislature was under no obligation to provide benefits for either class. It could have provided simply for the return of contribu-

tions to employees in both classes. Instead, the Legislature saw fit to deal more generously with employees having between ten and fifteen years of service than it did with employees having less than ten years of service. This treatment affords no ground for complaint on the part of the latter class of employees. It is doubtful whether a person who is not the recipient of a bounty may in law complain that another person has been provided with a windfall. At any rate, employees with more than ten years of service but less than fifteen years form a class differentiable from employees with less than ten years of service. See *State* v. *Mason,* 94 Utah 501, 78 P. 2d 920, 117 A. L. R. 330. It seems obvious that tenure should be the very fundamental and logical basis for classification in such a scheme for liquidation.

HENRIOD, J., concurs in the result.